**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

ANDRE G. BOUCHARD
CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

Date Submitted: May 16, 2018
Date Decided:  May 17, 2018

David E. Ross, Esquire
Bradley R. Aronstam, Esquire
Ross Aronstam & Moritz LLP
100 S. West Street, Suite 400
Wilmington, DE 19801

Myron T. Steele, Esquire
Matthew E. Fischer, Esquire
Potter Anderson & Corroon LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19899

RE:   ***CBS Corporation, et al. v. National Amusements, Inc., et al.***
Civil Action No. 2018-0342-AGB

Dear Counsel:

This letter constitutes the court's ruling on plaintiffs' motion for a temporary restraining order that was argued yesterday afternoon.  Although a more extensive discussion of the issues would be desirable, the need for an immediate decision necessitates brevity.  For the reasons explained below, the motion is denied, and the order that was entered at the conclusion of yesterday's hearing to protect the court's jurisdiction pending this ruling is hereby rescinded.

## I.    Background[1]

Plaintiffs consist of CBS Corporation and five independent members of its Board of Directors (the "Board") who serve on a Special Committee of the Board that was formed to consider a potential merger of CBS and Viacom, Inc.

Defendants consist of Shari Redstone, her father Sumner Redstone, National Amusements, Inc. ("NAI"), NAI Entertainment Holdings LLC, and the Sumner M. Redstone National Amusements Trust.  Ms. Redstone, through her control of NAI, effectively controls approximately 79.6% of the voting power of CBS, although NAI owns only approximately 10.3% of the economic stake in CBS.[2]

Before 2005, CBS and Viacom were part of one company, which also was called Viacom.  In 2005, CBS and Viacom were split into the standalone entities they are today.  CBS has two classes of stock, both of which are publicly traded on the New York Stock Exchange.  The Class A common stock has voting power; the Class B common stock does not.  Viacom has a similar dual class structure that gives NAI a similar level of voting control.[3]

---

[1] The factual recitation herein comes largely from plaintiffs' complaint, which was verified by each member of the Special Committee and a representative of CBS, as the court's rules require.  Ct. Ch. R. 3(aa).  Ms. Redstone declined to submit an affidavit even though defendants make a number of representations in a 25-page responsive brief about NAI's intentions as a controlling stockholder.

[2] Verified Compl. ¶ 4.

[3] *See Feuer v. Dauman*, 2017 WL 4817427, at *1 (Del. Ch. Oct. 25, 2017).

According to the complaint, Ms. Redstone began to pursue a merger of CBS and Viacom in 2016 on the heels of removing Viacom's then-CEO and replacing a number of directors on Viacom's board. The proposed deal allegedly foundered because Ms. Redstone would not agree to "the combined CBS/Viacom entity [being] managed as a non-controlled public company with a majority-independent board for at least the next five years."[4]

Over the next two years, Ms. Redstone took various actions, some of which are discussed below, that "have led the Special Committee to conclude that she presents a significant threat of irreparable and irreversible harm to the Company and its stockholders."[5] By early January 2018, Ms. Redstone again formally approached the boards of CBS and Viacom and pressed for a combination of the two companies.[6] In response, the CBS and Viacom boards each formed special committees to evaluate and negotiate a potential combination.[7] During negotiations, Ms. Redstone allegedly "refused to agree to typical public company

---

[4] Verified Compl. ¶ 43.

[5] Verified Compl. ¶ 2.

[6] Verified Compl. ¶ 46.

[7] Verified Compl. ¶ 49.

governance or submit any potential transaction to a vote of all of the unaffiliated public stockholders of CBS."[8]

On Sunday, May 13, 2018, the Special Committee determined that a CBS/Viacom merger is not in the best interests of CBS stockholders, other than NAI.[9] The Special Committee contends that, in response to this decision, Ms. Redstone may "immediately replace members of the Board and use the new directors to force through the merger . . . and make other changes to the CBS organizational documents" to impede the Board.[10]

At the request of the Special Committee, CBS scheduled a special board meeting to begin at 5 p.m. on May 17, 2018 to consider potential responses to Ms. Redstone's conduct.[11] At that meeting, the Special Committee intends to recommend that the Board approve a stock dividend of Class A voting shares to all holders of Class A voting and Class B non-voting shares (the "Dividend Proposal").[12] If approved, the dividend would dilute NAI's voting power from approximately 80% to 17%, but would not dilute its economic stake or the

---

[8] Verified Compl. ¶ 2.

[9] Verified Compl. ¶ 62.

[10] Verified Compl. ¶ 62.

[11] Verified Compl. ¶ 7.

[12] Verified Compl. ¶ 71.

economic stake of any other CBS stockholder.[13]  By any reckoning, the Dividend Proposal is an extraordinary measure, presumably reflective of the depth of concern the independent members of the Special Committee have about Ms. Redstone's intentions.

Importantly, if approved by the Board, "CBS will not issue any Class A shares distributable in the stock dividend, or otherwise cause that dividend to become effective, pending further order of the Court."[14]  In other words, the stock dividend would be conditional "unless and until the Delaware courts decide on a record whether it is legally and equitably permissible."[15]

On Monday, May 14, 2018, plaintiffs filed their complaint and a motion for a temporary restraining order.  The complaint contains three claims.  Count I asserts that NAI, Mr. Redstone, and Ms. Redstone have breached their fiduciary duties as the controlling stockholder of CBS.  Count II asserts a claim for estoppel against these same defendants.  Count III asserts a claim for aiding and abetting against the remaining two defendants.  In their motion, plaintiffs request that the court temporarily restrain defendants and their agents from:

---

[13] Verified Compl. ¶¶ 7, 72.

[14] Verified Compl. ¶ 9.

[15] Tr. 13 (May 16, 2018).

(a) interfering with the composition of CBS's Board (other than electing the slate currently nominated for election at CBS's May 18 annual meeting of stockholders) or modifying CBS's governance documents until any actions approved at the special board meeting called for May 17 become effective;

(b) taking any other actions to interfere with any decisions to be taken by CBS's Board at the May 17 special board meeting; and

(c) interfering with the issuance of any shares payable in a stock dividend.

No precedent has been cited in which this (or any other court) has granted such relief.

Approximately two hours after the complaint was filed on May 14, the court scheduled a hearing on the motion for a temporary restraining order to begin on Wednesday, May 16 at 2 p.m. Approximately one hour before the hearing, defendants filed a letter informing the court that NAI had executed and delivered consents to amend CBS's bylaws to, among other things, require approval by 90% of the directors then in office at two separate meetings held at least twenty business days apart in order to declare a dividend (the "90% Bylaw"). Given that CBS's Board currently consists of fourteen members, three of which are NAI-designees,

the 90% Bylaw (if valid) would allow NAI to block enactment of the Dividend Proposal.

In light of NAI's act of self-help before the court could hear plaintiffs' motion for a temporary restraining order, the court entered the form of order submitted by plaintiffs in support of their motion at the conclusion of yesterday's hearing as an interim measure to protect the court's jurisdiction until it could rule on the motion (the "Interim Order").[16]

## II. Analysis

A temporary restraining order may be issued when the movant demonstrates that: "[1] it has a colorable claim, [2] faces a likelihood of imminent, irreparable harm if relief is not granted, and [3] will suffer greater hardships if the TRO is not granted than the defendants would if the relief were granted."[17] The "colorable claim" requirement means that a plaintiff must state "essentially a non-frivolous cause of action."[18]

Defendants make a threshold argument that a stronger showing should be required on the merits of plaintiffs' motion for two reasons. First, defendants contend that plaintiffs should be required to establish actual success on the merits

---

[16] Dkt. 37.

[17] *Arkema Inc. v. Dow Chem. Co.*, 2010 WL 2334386, at \*1 (Del. Ch. May 25, 2010).

on the theory that a temporary restraining order would not just maintain the status quo. Rather, according to defendants, a temporary restraining order would effectively provide plaintiffs with "final, irreversible relief" because, if the temporary restraining order were granted, defendants would lose forever the right to take corporate action before the Board votes on the Dividend Proposal.[19] A flaw in this argument is that the Dividend Proposal would not be "irreversible" if approved by the Board. To the contrary, as noted above, it is structured not to become effective until the resolution of any judicial challenge. The real issue underlying defendants' argument is who—a controller or a board of directors— should have "first-mover" advantage to take action and define the contours of a fight between them. I touch upon this issue briefly in my consideration of the balance of the equities.

Second, defendants contend that plaintiffs at least should have to satisfy the reasonable likelihood of success standard necessary to obtain a preliminary injunction on the theory that plaintiffs delayed in seeking relief. I disagree with this contention. On the record before me, it appears that plaintiffs acted in a sensible and timely manner by filing their motion promptly after the Special

---

[18] *Reserves Dev. Corp. v. Wilmington Tr. Co.*, 2008 WL 4951057, at *2 (Del. Ch. Nov. 7, 2008).

[19] Defs.' Answering Br. at 12.

Committee concluded on May 13 that a CBS/Viacom merger was not in the best interests of the Company, when the prospect of retributive action by the controlling stockholder became acute.

### A.     Colorability of Plaintiffs' Claims

The key premise of the complaint is that, since its separation from Viacom in 2005, CBS has held itself out as a company committed to independent board governance in order to assuage stockholder concerns about investing in a company controlled by the Redstones—the so-called "Redstone discount." To that end, CBS publicly has "touted the independence of its Board" and "represented that CBS was—and would be—governed by an independent Board despite being a 'controlled company.'"[20] For example, CBS stated in its registration statement in 2005, and repeated materially identical representations in its proxy statements every year between 2006 and 2018, that "a majority of the CBS Corp. directors must be independent, as 'independence' is defined in the NYSE listing standard and in the CBS Corp. Guidelines."[21]

Indeed, according to plaintiffs, the fact that the certificate of incorporation of CBS (and Viacom), unlike those of some other controlled companies, authorizes the Board to approve a stock dividend that would dilute NAI's voting power is

---

[20] Compl. ¶ 30.

itself evidence of CBS's commitment to independent board governance. Defendants vigorously dispute this interpretation of CBS's certificate of incorporation, on which the court expresses no opinion.

According to the complaint, Ms. Redstone has taken various actions casting significant doubt over the genuineness of CBS's public promises of independent board governance that are detrimental to the interests of the stockholders who hold approximately 90% of the economic stake in the Company.[22] These actions include the following:

- o In 2017, Ms. Redstone "interfered with the Nomination and Governance Committee process"[23] by filling Mr. Redstone's "newly vacant board seat with the Redstones' personal lawyer who has since been instructing management and other directors on Ms. Redstone's/NAI's wishes— including the desire to replace certain directors."

---

[21] Compl. ¶¶ 31-32, 32 n.2.

[22] Compl. ¶ 2.

[23] In its 2005 registration statement, CBS represented that "despite being a 'controlled company,' CBS Corp. . . . will have . . . an independent nominating and governance committee," which, according to CBS's Corporate Governance Guidelines, "will recommend director candidates to the Board in accordance with the criteria, policies and principles set forth in its Charter and in these Guidelines." Compl. ¶¶ 31, 33.

o "Ms. Redstone has acted to undermine the management team, including, without board authority, talking to potential CEO replacements, deriding the Chief Operating Officer and threatening to change the Board."

o "During the course of the Special Committee's negotiations with respect to a possible merger, Ms. Redstone refused to agree to typical public company governance or submit any potential transaction to a vote of all of the unaffiliated public stockholders of CBS."

o "Ms. Redstone told the CEO of a potential acquirer of CBS that he should not make such an offer, thereby depriving CBS stockholders of a potentially value-enhancing opportunity that the Board or the Special Committee should have been free to evaluate."

o "It has been reported that Ms. Redstone is prepared to replace directors at CBS, including members of the Special Committee, in order to compel a merger [with Viacom] regardless of the determination of the Special Committee and the other independent directors of CBS."

In my opinion, particularly given CBS's proclaimed commitment to independent board governance, these allegations are sufficient to state a colorable

claim for breach of fiduciary duty against Ms. Redstone and NAI as CBS's controlling stockholder.[24]

## B. Irreparable Harm

"To demonstrate irreparable harm, a plaintiff must present an injury of such a nature that no fair and reasonable redress may be had in a court of law and must show that to refuse the injunction would be a denial of justice. The alleged injury must be imminent and genuine, as opposed to speculative."[25]

Plaintiffs' theory of irreparable harm has been somewhat elusive. As I understand it, plaintiffs' basic contention is that, if the court does not grant the unprecedented relief they are seeking in order to prevent Ms. Redstone from interfering with the Board's consideration of the Dividend Proposal (or other matters that may arise) during the special board meeting scheduled for later today, Ms. Redstone would have "the unfettered ability to replace the Board and cram

---

[24] *See, e.g., Shamrock Hldgs. v. Iger*, 2005 WL 1377490, at *6 (Del. Ch. June 6, 2005) (refusing to dismiss under Rule 12(b)(6) breach of fiduciary duty and equitable fraud claims where the process Disney ran to select a new CEO was alleged to be inconsistent with how the company publicly announced the process to stockholders.); *Dousman v. Kobus*, 2002 WL 1335621, at *5-7 (Del. Ch. June 6, 2002) (holding that defendants were estopped from enforcing a supermajority voting bylaw in a way that was inconsistent with prior public disclosures).

[25] *Aquila, Inc. v. Quanta Servs., Inc.*, 805 A.2d 196, 208 (Del. Ch. 2002) (internal citations omitted).

down a merger with Viacom, or otherwise take action that is detrimental to the public stockholders who hold 90% of CBS's equity."[26]

Although NAI's execution of consents to implement the 90% Bylaw within hours of the court's hearing on the instant motion belies defendants' contention that plaintiffs' concerns about Ms. Redstone are hypothetical or speculative, I am not convinced that the harm plaintiffs fear would be irreparable. To the contrary, the court has extensive power to provide redress if Ms. Redstone takes action(s) inconsistent with the fiduciary obligations owed by a controlling stockholder.[27]

Plaintiffs already committed during yesterday's hearing to challenge the validity of the 90% Bylaw, which this court will have the power to set aside if indeed it is proven to be invalid or inequitable. As defendants acknowledge, Section 225 of the Delaware Corporation Law is available to address an improper removal of directors.[28] Similarly, as defendants also acknowledge, recourse always is available in this court for a merger that is the product of a fiduciary

---

[26] Pls.' Mot. for a Temp. Restraining Order ¶ 18.

[27] *See, e.g., Hollinger Int'l, Inc. v. Black*, 844 A.2d 1022, 1029 (Del. Ch. 2004), *aff'd*, 872 A.2d 559 (Del. 2005) (granting injunctive relief to prevent Conrad Black from undoing the independent process to which he had agreed to govern the sale of a publishing company he controlled).

[28] Defs.' Answering Br. at 20 ("The availability of an action under Section 225 of the DGCL precludes any holding that the purportedly threatened removal of directors constitutes irreparable harm.").

breach.[29] To be sure, litigation over these types of issues takes time, is expensive, and can be distracting and messy. But that does not mean that full relief would not be available if the present motion is denied.

### C. Balance of the Equities

Finally, the court must "balance the plaintiff's need for protection against any harm that can reasonably be expected to befall the defendants if the injunction is granted."[30] In making this determination, the court "must be cautious that its injunctive order does not threaten more harm than good. That is, a court in exercising its discretion to issue or deny such a . . . remedy must consider all of the foreseeable consequences of its order and balance them. It cannot, in equity, risk greater harm to defendants, the public or other identified interests, in granting the injunction, than it seeks to prevent."[31]

Balancing the relevant considerations here implicates an apparent tension in our law between a controlling stockholder's right to protect its control position and the right of independent directors—empowered under 8 *Del. C.* § 141(a) with

---

[29] Def's Answering Br. at 21 ("If any subsequently announced transaction involving CBS is believed by any CBS stockholders to have resulted from a breach of a controlling stockholder's fiduciary duties, those claims—and request for injunctive relief—can be brought by an appropriate plaintiff at that time.").

[30] *See, e.g. Mills Acq'n Co. v. Macmillan, Inc.*, 559 A.2d 1261, 1279 (Del. 1989).

[31] *In re Del Monte Foods Co. S'hlders Litig.*, 25 A.3d 813, 839 (Del. Ch. 2011) (quoting *Lennane v. ASK Computer Sys., Inc.,* 1990 WL 154150, at \*6 (Del.Ch. Oct. 11, 1990)).

broad authority to manage "the business and affairs" of the corporation—to respond to a threat posed by a controller, including possible dilution of the controller.

On the one hand, cases such as *Frantz Mfg. Co. v. EAC Indus.* and *Adlerstein v. Wertheimer* recognize a controller's right to address threats to its control preemptively. In *Frantz*, for example, our Supreme Court found that a controller's preemptive enactment of bylaw amendments was "a permissible part of [the controller's] attempt to avoid its disenfranchisement as a majority shareholder."[32] And in *Adlerstein*, this court noted that a board's decision to keep a controller "in the dark" about a plan to issue preferred stock destroying his voting control was "significant" because the controller had the power to prevent the issuance by unseating directors.[33] The court explained that the controller "may or may not have exercised this power had he been told about the plan in advance [b]ut he was fully entitled to the opportunity to do so."[34]

On the other hand, there is a line of authority emanating from *Mendel v. Carroll*, where Chancellor Allen expressed an openness to "the possibility that a situation might arise in which a board could, consistently with its fiduciary duties,

---

[32] *Frantz Mfg. Co. v. EAC Indus.*, 501 A.2d 401, 407 (Del. 1985).

[33] *Adlerstein v. Wertheimer*, 2002 WL 205684, at *9 (Del. Ch. Jan. 25, 2002).

[34] *Id.*

issue a dilutive option in order to protect the corporation or its minority shareholders from exploitation by a controlling shareholder who was in the process of threatening to violate his fiduciary duties to the corporation."[35] It could be argued that, implicit in this reasoning, it would be reasonable in an appropriate circumstance to afford a board "breathing space" to deliberate over such options free from the preemptive power of a controller by affording temporary relief of the type plaintiffs seek here. Otherwise, how would a board be able to take such action as a practical matter if, as *Adlerstein* holds, the controller has a "right to advance notice [that] derives from a basic requirement in our corporation law that boards of directors conduct their affairs in a manner that satisfies minimum standards of fairness"?[36]

No precedent has been identified, however, in which the court has ever entertained, much less sanctioned, the type of request for relief that plaintiffs make here. In and of itself, this suggests that a truly extraordinary set of circumstances would be necessary to grant such a request.

---

[35] 651 A.2d 297, 306 (Del. Ch. 1994); *see also Klaassen v. Allegro Dev. Corp.*, 2013 WL 5967028, at *11 (Del. Ch. Nov. 7, 2013) ("[A] board acting loyally may take action to oppose, constrain, or even dilute a large or controlling stockholder.") (citing, among other cases, *Mendel v. Carroll* and *Hollinger*, 844 A.2d at 1088); *Ford v. VMware, Inc.*, 2017 WL 1684089, at *11 (Del. Ch. May 2, 2017) ("Delaware decisions recognize that a board can respond to a threat posed by a controlling stockholder.").

[36] *Adlerstein*, 2002 WL 205684, at *9.

The exigency of plaintiffs' application precludes further consideration of this point of tension. *Adlerstein*, which expressly endorsed a controller's right to make the first move preemptively to protect its control interest, is the clearest precedent and weighs heavily in defendants' favor. Exercise of that right, of course, is subject to judicial review, which can afford full relief in this circumstance in my opinion to vindicate the interests of CBS and its stockholders, if appropriate. Accordingly, the balance of the equities weighs in defendants' favor.

\* \* \* \* \*

For the reasons explained above, plaintiffs' motion for a temporary restraining order is DENIED, and the Interim Order is hereby RESCINDED effectively immediately.

**IT IS SO ORDERED.**

Sincerely,

*/s/ Andre G. Bouchard*

Chancellor

AGB/gm

17